IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|                                 |   |                              |
|---------------------------------|---|------------------------------|
| ADRIAN VINCENT DUNCAN,          | § |                              |
| (TDCJ-CID #1711676)             | § |                              |
|                                 | § |                              |
| Petitioner,                     | § |                              |
|                                 | § |                              |
| VS.                             | § | CIVIL ACTION NO. H-14-3125   |
|                                 | § |                              |
| WILLIAM STEPHENS,               | § |                              |
|                                 | § |                              |
| Respondent.                     | § |                              |

MEMORANDUM AND OPINION

Petitioner, Adrian Vincent Duncan, seeks habeas corpus relief under 28 U.S.C. § 2254,
challenging a conviction in the 263rd Judicial District Court of Harris County, Texas.  Respondent
filed a motion for summary judgment, (Docket Entry No. 13), and copies of the state court record.
(Docket Entry Nos. 10, 11, & 17).  Duncan has filed his response.  (Docket Entry Nos. 15 & 16).
After consideration of the motion and response, the record, and applicable authorities, the court
grants respondent's motion.  The reasons for this ruling are stated below.

I.       Background

A jury found Duncan guilty of the felony offense of burglary of a habitation with intent to
commit theft. (Cause Number 1266187).  Duncan pleaded true to the enhancement paragraphs
relating to prior convictions for burglary of a building in Cause Number 567136 and theft in Cause
Number 642604. On March 28, 2011, the jury sentenced Duncan to thirty-five years imprisonment.
The Fourteenth Court of Appeals of Texas affirmed Duncan's conviction on April 3, 2012.  The
Texas Court of Criminal Appeals refused Duncan's petition for discretionary review on August 22,

2012.  Duncan filed an application for state habeas corpus relief on May 7, 2013, which the Texas

Court of Criminal Appeals denied without written order on August 20, 2014.  (Docket Entry No.

11-20, p. 1).

On October 31, 2014, this court received Duncan's federal petition.  Duncan contends that

his conviction is void for the following reasons:

(1) The State withheld exculpatory evidence;

(2) The evidence was legally insufficient;

(3) He was denied due process when the court of appeals affirmed the burglary conviction on a

different statutory basis;

(4) His trial attorney, Steven Greenlee, was ineffective in:

       i. threatening him if he did not agree to case resets,

       ii. denying his request for a speedy trial,

       iii. refusing to request pretrial bail,

       iv. failing to request an instruction on mistake of fact,

       v. failing to introduce the 911 recording,

       vi. failing to request an instructed verdict,

       vii. admitting Duncan's guilt,

       viii. failing to object to and impeach the complainant's perjured testimony,

       ix. failing to object to the defective jury charge,

       x. failing to conduct an independent investigation, and

       xi. failing to understand the law;

(5) He was constructively denied representation under the Sixth Amendment due to his disagreements with Greenlee;

(6) The State's inadequate investigation denied him due process;

(7) The State allowed false testimony to go uncorrected;

(8) He was denied his right to a speedy trial; and

(9) The denial of bail denied him due process.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-12).

## II.    The Applicable Legal Standards

### A.    28 U.S.C. § 2254

"[C]ollateral review is different from direct review," *Brecht v. Abrahamson,* 507 U.S. 619, 633 (1993), and the writ of habeas corpus is "an extraordinary remedy," *Id.,* reserved for those petitioners whom "society has grievously wronged." *Id.* at 634.  It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)).  It provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions."). Accordingly, the federal habeas court's role in reviewing state prisoner petitions is exceedingly narrow.  "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir. 1986).  They must generally defer to state court decisions on the merits, *Moore v. Cockrell,* 313 F.3d 880, 881 (5th Cir. 2002), and on procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson,* 132 F.3d 214, 220 (5th Cir. 1998).  They may not grant relief to correct errors of state constitutional, statutory, or

procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'" *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (2012). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion"). Indeed, state courts are presumed to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state

court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir.

2001).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> (e)(1)  In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In sum, the federal writ serves as a "guard against *extreme malfunctions* in the state criminal

justice systems," not as a vehicle for error correction. *Harrington v. Richter,* 562 U.S. 86 (2011)

(citation omitted) (emphasis added).  "If this standard is difficult to meet, that is because it was

meant to be." *Id.*

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to

summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v.*

*Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the

extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that

findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that,

in a summary judgment proceeding, all disputed facts must be construed in the light most favorable

to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Duncan is a *pro se* petitioner. In this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court accords Duncan's state and federal habeas petitions a broad interpretation. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### B.    Ineffective Assistance of Counsel

To prove an ineffective-assistance-of-counsel claim, a petitioner must satisfy both prongs of the test announced in *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984), by showing not only constitutionally deficient performance by counsel, but also actual prejudice to his legal position. *Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). The Court need not address both components if the petitioner makes an insufficient showing on one. *Strickland,* 466 U.S. at 697. To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A court considering such a claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter,* 562 U.S. 86 (2011) (citation omitted). To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Porter v.*

*McCollum,* 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted). A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland. Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994). The probability "of a different result must be substantial, not just conceivable." *Richter,* 562 U.S. at 112. Thus, counsel's performance is entitled to "a heavy measure of deference" by a reviewing court. *Cullen v. Pinholster,* 563 U.S. 170, ——, 131 S. Ct. 1388, 1408 (2011) (internal quotation marks and citation omitted).

Moreover, the court must review a petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)," *Id.* at 1403, and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101.

The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

**III.     Statement of Facts**

The appellate court summarized the evidence at trial as follows:

On June 8, 2010, Nita Brown departed from the garage of her townhome for an afternoon walk and left her garage door open. A few minutes into her walk, Brown testified that she observed a young African American man walking in the neighborhood. Brown testified that she was alarmed by the man's presence in the neighborhood because she had never seen him before and because her neighborhood is made up primarily of "people over the age of 60." She decided to return home a few minutes later.

When she arrived, she found the man, who was later identified as appellant, standing inside her garage. Brown asked him, "Can I do something for you?" He replied, "I'm fine," then walked past Brown out of the garage. Brown stated that she did not see appellant touch anything, but she later noticed that a closet door in the garage was open and an air compressor was in the middle of the garage rather than in its usual location inside the closet. Brown stated that she knew the closet door was closed before she left for the walk, and that she found the compressor in the spot where her husband's car was parked prior to his leaving for work that morning.

Brown immediately alerted her neighbor, Jean Jackson, who told Brown to contact the police while Jackson followed appellant. Jackson departed in the direction she had seen appellant walking. Jackson lost sight of appellant and asked another neighbor, Jim Smith, if he had seen appellant. Smith informed Jackson he had seen appellant pass by at a pace Smith described as "unusual" and with "very large strides" at "a rapid pace," but not running. Jackson soon sighted appellant moving at a "brisk walk" towards a restaurant, where appellant was arrested by police minutes later.

At trial, the jury found appellant guilty of the felony offense of burglary of a habitation with the intent to commit theft. Appellant was sentenced to 35 years' incarceration based upon jury recommendation.

*Duncan v. State,* No. 14–11–00298–CR, 2012 WL 1137910, at *1-2 (Tex. App. -- Houston [14th

Dist.] 2012, pet. ref'd)(not designated for publication).

## IV.    The Suppression of Favorable Evidence

(Ground 1)

Duncan claims that the prosecutor failed to disclose favorable evidence. "'[T]he suppression

by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The Supreme Court has consistently held the prosecution's duty to disclose evidence material to either guilt or punishment applies even when there has been no request by the accused. *Banks v. Dretke*, 540 U.S. at 690 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)); *United States v. Agurs*, 427 U.S. 97 (1976). This duty applies to exculpatory and impeachment evidence. *Strickler v. Greene*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Undisclosed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). A reasonable probability of a different result is shown when nondisclosure puts the case in a different light so as to undermine confidence in the jury verdict. *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995). "[I]nadmissible evidence may be material under *Brady*." *Spence v. Johnson*, 80 F.3d 989, 1005 n.14 (5th Cir. 1996). The key is "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999).

To establish a violation under *Brady v. Maryland,* 373 U.S. 83 (1963), "a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." *United States v. Garcia,* 567 F.3d 721, 735 (5th Cir.) (quoted cases omitted), *cert. denied,* --- U.S. ---, 130 S. Ct. 303 (2009).

Assuming that the prosecutor suppressed the offense report, Duncan has not shown that the suppressed evidence was favorable to the defense. Duncan asserts that the State's main witness, Nita Brown, testified to facts that were different from statements contained in the police offense report.

According to Duncan, the police report provided that on June 8, 2010, Nita Brown was taking her dog on an afternoon walk and she left her garage door open. When she returned from her walk, she found Duncan inside her garage with her air compressor in his hands. When Brown asked Duncan, "May I help you?", Duncan said, "No." Duncan then dropped the air compressor and ran past complainant, almost knocking her down." At trial, Brown testified that when she was on her second daily afternoon dog walk, she left her garage door open. Brown became alarmed when during her walk she saw an African American man walking in her neighborhood. Brown returned to her home where she saw Duncan in her garage with nothing in his hands. When she asked Duncan if he needed help, Duncan said, "No," and walked past her. Brown also testified that she did not notice anything out of place when Duncan was in her garage. Duncan states that the fabricated police report could have been used to impeach Brown's testimony.

The police report was not favorable to the defense. At trial, Brown stated that she never saw Duncan touching the air compressor. Introducing the police report would have been detrimental to the defense because it would establish that Duncan did move the air compressor with the intent to steal it or something else in the garage.

As to the third element of the *Brady* claim, Duncan has not shown that the suppressed evidence was material to either guilt or punishment. The jury heard Brown testify that she saw Duncan in her neighborhood as she was walking her dog. Realizing that she had left her garage door open, Brown cut her walk short and returned home. Brown saw Duncan in the middle of her garage about three feet from the air compressor. She testified that the air compressor was usually in a closet in the garage, and the door to that closet was closed when she left for her walk. Other witnesses testified that they saw Duncan walking at a brisk pace down the street. The arresting officer testified

that Duncan was verbally and physically combative, and three officers had to subdue him. Duncan has not shown that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Duncan's prosecutorial misconduct claim lacks merit.

## V.     The Claim Based on Sufficiency of the Evidence

(Grounds 2 & 3)

Duncan challenges the legal sufficiency of the evidence introduced at his trial. The court sets forth these claims in more detail below. The court finds that these claims lack merit. In reviewing legal sufficiency, Texas and federal courts view the evidence in the light most favorable to the verdict and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

Duncan's claim that the evidence was legally insufficient lacks merit. A federal habeas corpus court reviews the evidentiary sufficiency of a state court conviction under the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). The evidence need

not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, as long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson,* 126 F.3d 662, 664 (5th Cir. 1997). To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Jackson,* 443 U.S. at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000), *cert. denied,* 121 S. Ct. 885 (2001). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir.), *cert. denied,* 498 U.S. 903 (1990). A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts. *Marler v. Blackburn,* 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices must be resolved in favor of the jury's verdict. *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994). Credibility issues are for the finder of fact and do not undermine the sufficiency of the evidence. *United States v. Morgan,* 117 F.3d 849, 854 n.2 (5th Cir.), *cert. denied,* 118 S. Ct. 641 (1997). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993)(citation omitted).

Texas Penal Code § 30.02 defines burglary as follows:

> (a) A person commits an offense if, without the effective consent of the owner, the person:
>
> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

(b) For purposes of this section, "enter" means to intrude:

(1) any part of the body; or
(2) any physical object connected with the body.

TEX. PENAL CODE § 30.02.

The indictment charged Duncan as follows:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:
> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, ADRIAN VINCENT DUNCAN, hereafter styled the Defendant, heretofore on or about JUNE 8, 2010, did then and there unlawfully, with intent to commit theft enter a habitation owned by NITA BROWN, a person having a greater right to possession of the habitation than the Defendant and hereafter styled the Complainant, without the effective consent of the Complainant, namely, without any consent of any kind.
>
> Before the commission of the offense alleged above, (hereafter styled the primary offense), on JULY 30, 1990, in Cause Number 567136, in the 183RD DISTRICT COURT of HARRIS County, Texas, the Defendant was convicted of the felony of BURGLARY OF A BUILDING.
>
> Before the commission of the primary offense, and after the conviction in Cause Number 567136 was final, the Defendant committed the felony of THEFT and was finally convicted of that offense on MAY 6, 1993, in Cause Number 642604, in the 174TH DISTRICT COURT of HARRIS County, Texas.
>
> AGAINST THE PEACE AND DIGNITY OF THE STATE.

(Docket Entry No. 11-23, p. 41).

In ground two, Duncan claims that the evidence was legally insufficient to support the verdict. Duncan states that the indictment alleged that he entered Brown's garage with the intent to

commit theft (citing TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2010). Duncan complains that the Fourteenth Court of Appeals affirmed the judgment and found the evidence sufficient under Section 30.02(a)(3) of the Penal Code (citing TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2010)).

In ground three, Duncan makes a similar claim, complaining that the appellate court affirmed his conviction based on Section 30.02(a)(3) instead of Section 30.02(a)(1). He says there was a discrepancy between the indictment and the proof at trial. He also cites *Cole v. Arkansas* for the proposition that an appellate court violates due process by affirming a conviction "under a criminal statute for a violation of which they had not been charged."

In his appellate brief, Duncan argued that the State failed to prove the element of "intent to commit theft." (Docket Entry No. 10-1, pp. 9, 12, 14-16). He cited *Solis v. State*, 589 S.W.2d 444, 446-447 (Tex. Crim. App. 1979) for the proposition that his behavior was "'sufficiently inexplicable that reasonable doubt remains as to what his specific criminal intentions actually were.'" (*Id*. at 14-15). Duncan did not cite to either Section 30.02(a)(1) or (a)(3) in his brief. (*Id*. at 14-16). *Solis* involved a conviction under Section 30.02(a)(1), an entry with the intent to commit theft.

In the appellee's brief, the State cited the wrong subsection, Section 30.02(a)(3). (Docket Entry No. 10-2 p. 10). Though the State cited (a)(3) instead of (a)(1), it did cite four cases in which the appellate court examined sufficiency of the evidence under the correct subsection, Section 30.02(a)(1). (Docket Entry No. 10-2, pp. 11-12) (citing *Lewis v. State*, 715 S.W.2d 655, 655-656 (Tex. Crim. App. 1986) (affirming under Section 30.02(a)(1)), *White v. State*, 630 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (same), *Stearn v. State*, 571 S.W.2d 177, 177-178 (Tex. Crim. App. [panel op.] 1978) (same), and *Black v. State*, 183 S.W.3d 925, 928-929 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (same)). In affirming Duncan's conviction, the

Fourteenth Court of Appeals also made the same initial mistake, *i.e.*, citing Section 30.02(a)(3) instead of Section 30.02(a)(1).  Despite this mistake, the appellate court cited cases involving the application of Section 30.02(a)(1). *Id.* (citing *Lewis*, 715 S.W.2d at 657, *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984) (affirming under Section 30.02(a)(1), *Stearn*, 571 S.W.2d at 178 (same), *Black v. State*, 183 S.W.3d 925, 928-929 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (same), *White*, 630 S.W.2d at 342 (same)).  While the Fourteenth Court of Appeals cited (a)(3) instead of (a)(1), it affirmed the judgment under Section 30.02(a)(1).

"When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Id.; see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In this case, the Fourteenth Court of Appeals rejected Duncan's challenge to the sufficiency of the evidence.  Because the Fourteenth Court of Appeals issued the last reasoned opinion on this matter, this court "looks through" the Texas Court of Criminal Appeals' order to the appellate court's decision.

The Fourteenth Court of Appeals found:

A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and either commits or attempts to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). Intent to commit theft may be inferred from the circumstances. *Lewis v. State,* 715 S.W.2d 655, 657 (Tex. Crim. App. 1986). The intent with which a defendant enters a habitation is a fact question for the jury to decide based upon the surrounding circumstances. *Robles v. State,* 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). When supported by sufficient circumstantial evidence, "the jury's finding of intent to steal will not be disturbed on appeal where there is no testimony to indicate that the entry was made with any other intent." *Steam v. State,* 571 S.W.2d 177, 178 (Tex. Crim. App. [Panel Op.] 1978).

Relying upon *Solis v. State,* 589 S.W.2d 444 (Tex. Crim. App. [Panel Op.] 1979), appellant urges that his behavior on the day of the incident was "inexplicable," and thus insufficient to establish the criminal intent to commit theft. In *Solis,* the defendant removed a window screen from the Alfred residence, then took the screen next door to the Pierce home, "placed it on the lawn near the Pierce front window, and attempted to enter the Pierce house before being interrupted by Mrs. Pierce." *Id.* at 446. The defendant was convicted of attempted burglary with the intent to commit theft in the *Alfred residence. Id.* at 445. The Court of Criminal Appeals reversed the conviction because, "although the circumstances show that appellant probably intended to enter the Alfred house with intent to commit theft, his behavior after removal of the screen was sufficiently inexplicable that reasonable doubt remains as to what his specific criminal intentions actually were." *Id.* at 446–47.

In contrast to *Solis,* "there is more evidence in this case than appellant's attempting to enter the complainant's home." *See Gear v. State,* 340 S.W.3d 743, 748 & n.9 (Tex. Crim. App. 2011) (additional evidence, including "implausible and inconsistent explanations for [the defendant's] conduct, and his flight upon being interrupted by the complainant," constituted legally sufficient evidence supporting intent to commit theft). Though appellant's entry occurred during the day and Brown did not see appellant touch any property, Brown testified that the closet door in the garage was closed when she left, that it was open after she returned to find appellant standing in her garage minutes later, and that the air compressor was in the middle of the garage rather than in its usual location inside the closet. Such circumstances support an inference that appellant moved the air compressor, and therefore intended to commit theft. *See Lewis,* 715 S.W.2d at 657 (defendant's presence inside home, in addition to

movement of property from a closed cupboard, was sufficient to show an intent to commit theft despite absence of stolen property on defendant's person); *see also Black v. State*, 183 S.W.3d 925, 928 (Tex. App. - Houston [14th Dist.] 2006, pet. ref'd) (evidence of a computer system stacked and "ready to go" near point of entry supported intent to commit theft); *White v. State*, 630 S.W.2d 340, 342 (Tex. App. - Houston [1st Dist.] 1982, no pet.) (movement of equipment from one part of garage to another supported intent to commit theft). And despite the fact that appellant did not "run" from the Brown residence, multiple witnesses testified that appellant left the scene at a pace described as "unusual" and with "very large strides" at "a rapid pace," or a "brisk walk." "[W]hile flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn." *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g); *see also McLendon v. State*, 167 S.W.3d 503, 509 (Tex. App. - Houston [14th Dist.] 2005, pet. ref'd). On this record, we conclude there is sufficient evidence to show appellant possessed an intent to commit theft based upon the circumstances surrounding appellant's presence in and departure from Brown's garage. A rational jury could have found appellant guilty of burglary of a habitation beyond a reasonable doubt based on the combined and cumulative force of all the incriminating circumstances presented. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."). We overrule appellant's first issue.

*Duncan v. State,* No. 14–11–00298–CR, 2012 WL 1137910, at *2-3 (Tex. App. -- Houston [14th Dist.] 2012, pet. ref'd)(not designated for publication).

The evidence was sufficient to support Duncan's conviction for burglary. The jury heard evidence that Duncan entered Brown's garage without Brown's consent. Brown testified that she saw Duncan standing near the air compressor, which had been moved from its original location in a closet within the garage. Upon seeing Brown, Duncan immediately fled from the garage. Witnesses saw Duncan walking at a very brisk pace down the street. When confronted by the police,

Duncan was verbally and physically combative.  Duncan is not entitled to habeas relief on his sufficiency-of-the-evidence claim. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

The state court's decision was not contrary to clearly establish federal law.  Duncan is not entitled to habeas relief on this claim.

## VI.   The Claim of Ineffective Assistance of Trial Counsel

(Ground 4)

### A.   Threats and Speedy Trial

Duncan complains that Greenlee forced Duncan to consent to resetting the trial date.  As a result, Duncan complains that his right to a speedy trial was violated.  The record shows that Duncan agreed to at least two resets on September 29, 2010, and October 29, 2010. (Docket Entry No. 10-5, Clerk's Record, pp. 13, 15). (There were also four additional resets on June 11, 2010, July 20, 2010, August 25, 2010, and March 24, 25, 28, 2010.)  (*Id*. at 82).  Duncan filed a pro se pretrial writ of habeas corpus motion for a speedy trial on November 16, 2010.  (Docket Entry No. 10-5,  Clerk's Record, pp. 16-17).  He then filed a motion to dismiss on December 15, 2010 based on the failure to provide a speedy trial.  (Docket Entry No. 10-5,  Clerk's Record, pp. 25-31).

The offense occurred on June 8, 2010, and the complaint was filed the next day. (*Id*. at 6-7). He was indicted on August 18, 2010. (*Id*. at 12).  He was tried and convicted on March 28, 2011, nine months after the complaint was filed and seven months after the indictment. (*Id*. at 81).  When the period between arrest and trial is less than one year, courts will not reverse absent willful delay by the government or extreme prejudice to the defendant. *United States v. Hughes*, 602 F.3d 669 (5th

Cir. 2010)(citing *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000)).  Though Duncan points to

delay, he does not argue that he was prejudiced by being held in a county facility pending trial.

Duncan raised this issue on appeal, and the Fourteenth Court of Appeals rejected this claim,

stating:

> Appellant argues in his second issue that his federal and state
> constitutional right to a speedy trial was violated because he was
> incarcerated for more than eight months awaiting trial.
> The right to a speedy trial is guaranteed by the Sixth Amendment,
> which applies to the states through the Fourteenth Amendment. U.S.
> CONST. amend. VI, XIV; *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.
> Ct. 2182, 33 L. Ed.2d 101 (1972). Under the Texas Constitution, the
> speedy-trial right exists independently of the federal guarantee, but
> we review claims relating to a denial of the state speedy-trial right
> under the same analysis as federal claims. *Cantu v. State,* 253 S.W.3d
> 273, 280 n.16 (Tex. Crim. App. 2008) (applying same standard to
> state and federal speedy-trial claims); *see also* TEX. CONST. art. I,
> § 10; *Barker,* 407 U.S. at 515.
> We analyze constitutional speedy-trial claims on a case-by-case basis
> by "weighing and then balancing the four *Barker v. Wingo* factors,"
> which include: (1) length of the delay; (2) reason for the delay; (3)
> assertion of the right; and (4) prejudice to the accused. *Cantu,* 253
> S.W.3d at 280; *see also Barker,* 407 U.S. at 530–32. Appellate courts
> must conduct a bifurcated review of a trial court's ruling [FN1] on a
> speedy-trial motion. *Zamorano v. State,* 84 S.W.3d 643, 648 (Tex.
> Crim. App. 2002). Factual issues are reviewed under an abuse of
> discretion standard, while legal issues are reviewed de novo. *Id.*
>
>> FN1.  Although appellant filed several pro se motions
>> regarding his speedy-trial claim with the trial court, the record
>> does not contain express ruling on the pro se motions. *See*
>> *Guevara v. State,* 985 S.W.2d 590, 592 (Tex. App.-Houston
>> [14th Dist.] 1999, pet. ref'd) (holding that appellant may not
>> raise an issue regarding speedy-trial claim for the first time on
>> appeal). Because we conclude that appellant's speedy-trial
>> claim is without merit, we need not decide whether appellant
>> properly preserved this issue for our review.
>
> With respect to the first *Barker* factor, "[t]he length of the delay ...
> acts as a 'triggering mechanism.'" *Id.* (citing *Barker,* 407 U.S. at
> 530). "Unless the delay is presumptively prejudicial, courts need not

19

inquire into [or] examine the other three factors." *Id.* Based upon the circumstances of the case, "the delay that can be tolerated for an ordinary street crime" is considerably less than, for example, a "serious, complex conspiracy charge." *Id.* at 649 (internal quotation omitted).

Delay under the first *Barker* factor is measured from the date of the formal accusation or arrest until the date the defendant is brought to trial. *State v. Smith,* 76 S.W.3d 541, 548 (Tex. App. - Houston [14th Dist.] 2002, pet. ref'd) (citing *Webb v. State,* 36 S.W.3d 164, 173 (Tex. App. - Houston [14th Dist.] 2000, pet. ref'd)). Pre-accusation delay is not relevant to the speedy-trial analysis. *United States v. Marion,* 404 U.S. 307, 313, 92 S. Ct. 455, 30 L. Ed.2d 468 (1971). Courts generally have held that a delay approaching one year from formal accusation or arrest of the defendant until trial to be presumptively prejudicial, triggering the analysis of the remaining *Barker* factors. *Cantu,* 253 S.W.3d at 281 n.21; *Celestine v. State,* 356 S.W.3d 502, 507 (Tex. App.-Houston [14th Dist.] 2009, no pet.). Appellant was arrested on June 8, 2010, indicted on August 18, 2010, and brought to trial on March 25, 2011. This establishes a delay of nine months from appellant's arrest (and seven months from indictment) until he was brought to trial. However, appellant agreed to reset his trial—which was originally set for July 20, 2010—on three separate occasions, culminating in a final reset date of October 29, 2010.[FN2] This court has held that delays based upon agreed resets should not be included in speedy-trial computations under the first *Barker* factor. *See State v. Kuri,* 846 S.W.2d 459, 463 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd) (agreed resets are "inconsistent with assertion of a speedy trial right, and the delay covered by such resets should not be included in speedy trial computations" under first *Barker* factor), *overruled on other grounds by Johnson v. State,* 954 S.W.2d 770 (Tex. Crim. App. 1997); *accord Celestine,* 356 S.W.3d at 507–08 (relying on *Kuri* to hold that nine-month delay during eleven-month period between arrest and trial was due to agreed resets and therefore excluded from speedy-trial calculations under first *Barker* factor); *cf. Caicedo v. State,* 769 S.W.2d 597, 598 (Tex. App.-Houston [14th Dist.] 1989, no writ) (holding that delay was due to agreed resets, which waived appellant's speedy-trial claim). Accordingly, we can determine that appellant suffered a delay of just over six months for purposes of analyzing his speedy-trial claim.

> FN2. The first and third agreed resets bear appellant's purported signature. The second agreed reset was not signed by appellant, but was signed by his trial counsel. Appellant

asserts in his brief on appeal that counsel forced him to sign the agreed reset forms contained in the record. However, appellant raises no issue with respect to such an assertion, and cites to no evidence in the record to support such an assertion.

We conclude on this record that such a delay was not presumptively prejudicial under the first *Barker* factor. *See, e.g., Mannahan v. State,* Nos. 09–04–163–CR & 09–04–164–CR, 2005 WL 2036255, at *2 (Tex. App.-Beaumont Aug. 10, 2005, pet. ref'd) (mem. op., not designated for publication) (seven-month delay for prosecution of burglary of a building was not presumptively prejudicial); *see also Cantu,* 253 S.W.3d at 281 (noting that courts have held four-month delay insufficient to trigger inquiry of remaining *Barker* factors); *Whitfield v. State,* 137 S.W.3d 687, 690 (Tex. App.-Waco 2004, no pet.)(delays of eight months or more usually are considered presumptively prejudicial); *cf. In re J.M.,* No. 13–04–226–CV, 2005 WL 1910801, at *4 (Tex. App.-Corpus Christi Aug. 11, 2005, pet. denied) (mem. op.) (five-month delay in prosecution of delinquent conduct committed by escaping from a juvenile correctional facility "could in no way be construed as 'presumptively prejudicial'"). Until there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Because appellant's delay was insufficient to warrant further analysis under *Barker,* we overrule appellant's second issue.

*Duncan v. State,* No. 14–11–00298–CR, 2012 WL 1137910, at *3-4 (Tex. App. -- Houston [14th Dist.] 2012, pet. ref'd)(not designated for publication).

Duncan has failed to show that Greenlee's failure to secure a speedy trial amounted to deficient performance. Nor has Duncan shown any prejudice resulting from the alleged denial of a speedy trial.

Duncan is not entitled to habeas relief on this claim.

## B.    Bail

In his second complaint against Greenlee, Duncan claims that Greenlee failed to ask for bail to be set and then lied to him and told him that his bail amount was $100,000. The record indicates that the magistrate reviewed Duncan's eligibility for bail and decided against it. (Docket Entry No. 10-5,  Clerk's Record, pp. 6-7, 9-10).

Excessive bail is prohibited by the Eighth Amendment to the United States Constitution and by article I, section 13 of the Texas Constitution. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13. With few exceptions, all persons accused of a crime in Texas have a right to bail pending trial. TEX. CONST. art. I, § 11; TEX. CODE CRIM. PROC. ANN. art. 1.07 (Vernon 2005). The primary purpose of an appearance bond or bail is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). While bail should be sufficiently high to give reasonable assurances that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey,* 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). In setting bail, therefore, a balance must be struck between the defendant's right to bail and the state's interest in assuring the defendant's appearance at trial along with considerations of the safety of the community. *See Ex parte Beard,* 92 S.W.3d 566, 573 (Tex. App. - Austin 2002, pet. ref'd). The burden is on the appellant to show the bail amount is excessive. *See Ex parte Charlesworth,* 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). The Texas Legislature has established the following factors to be considered by the trial court in setting pretrial bail:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15.

Consideration of the nature of the offense and the circumstances of its commission necessarily involves consideration of the punishment authorized by law. *Ex parte Ivey,* 594 S.W.2d at 99. Moreover, the ability of an accused to post bail is merely one factor to be considered in determining the appropriate bail. *See Brown v. State,* 11 S.W.3d 501, 504 (Tex. App. - Houston [14th Dist.] 2000, no pet.). A defendant's inability to meet the bail set by the trial court does not automatically render the bail excessive. *Id.*

Other factors that may be considered include any aggravating factors raised by the case along with the defendant's 1) work record, 2) family and community ties, 3) length of residency, 4) prior criminal record, 5) conformity with previous bail conditions, and 6) other outstanding bails. *See Maldonado v. State,* 999 S.W.2d 91, 93 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac,* 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981)); *Ex parte Milburn,* 8 S.W.3d 422, 425 (Tex. App.-Amarillo 1999, no pet.). These considerations are also designed to gauge the risk that a defendant will flee the jurisdiction. *See Ex parte Hulin,* 31 S.W.3d 754, 761 (Tex. App.-Houston [1st Dist.] 2000, no pet.). It appears that the trial judge denied Duncan bail due to his prior convictions.

Duncan has failed to show that Greenlee's failure to request and obtain bail amounted to deficient performance.  Nor has Duncan shown any prejudice resulting from the alleged denial of bail.

Duncan is not entitled to habeas relief on this claim.

## C.      Mistake of Fact Instruction

Duncan faults Greenlee for failing to ask for a mistake of fact instruction.  Generally, a defendant is entitled to submission of an affirmative defensive instruction on every issue raised by the evidence even if the trial court thinks that the testimony could not be believed. *See Chavers v. State,* 991 S.W.2d 457, 459 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd).  In this case, Duncan contends that he raised a fact issue as to the mistake-of-fact defense, which is set forth by section 8.02 of the Texas Penal Code: "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (Vernon 2003).

Duncan contends that there was no evidence of "burglarious entry, no damage to the alleged entered habitation, no flight, no fingerprints" and no uncommon behavior.  Duncan claims that this evidence would negate a finding that he acted with the intent to commit theft, that is, the degree of culpability required to convict him of burglary. Therefore, he argues that the trial court erred by refusing to submit a mistake-of-fact instruction.

However, the court finds that the requested instruction was not necessary because Duncan's defense - that he lacked the requisite intent to commit theft because of a mistaken belief - was adequately covered by the charge submitted to the jury. Therefore, this court concludes the trial court

did not err by refusing to submit a defensive issue that merely denied the existence of an essential element of the State's case. *See Chavers*, 991 S.W.2d at 460.

In *Bang v. State*, the Thirteenth Court of Appeals held that a mistake-of-fact instruction should be submitted whenever raised by the evidence. 815 S.W.2d 838, 841 (Tex. App.-Corpus Christi 1991, no pet.). However, *Bang* was closely followed by *Bruno v. State,* in which the Texas Court of Criminal Appeals indicated that a trial court is not always required to submit an unnecessary mistake-of-fact instruction if the defense is adequately covered by the charge as given. 845 S.W.2d 910, 913 (Tex. Crim. App. 1993). In *Bruno,* the defendant was accused of unauthorized use of a motor vehicle but testified that he believed he had the owner's permission to drive the car. *See id.* at 911. The Court of Criminal Appeals noted that, in some unauthorized-use cases, the defendant alleges that he was given permission to operate the vehicle by a third party he mistakenly believed to be the vehicle's owner. *See id.* at 912 (citing *Gardner v. State,* 780 S.W.2d 259, 263 (Tex. Crim. App. 1989)). Under those facts, a mistake-of-fact instruction becomes necessary because the jury could find that (1) the defendant believed he had the consent of the third party to use the vehicle, and (2) the *true owner* of the vehicle had not given him permission. *Bruno,* 845 S.W.2d at 912. However, in the absence of such a third party, the Court of Criminal Appeals determined that a mistake-of-fact instruction was unnecessary:

> In the absence of this third party, the jury could not believe both the testimony of [the] true owner of the vehicle and the testimony of appellant as it could in *Gardner.* Only one of the incompatible stories could be believed....
> The jury heard both stories. As they would have necessarily been required to disbelieve appellant's story before they could find sufficient evidence to convict, the instruction need not have been given in the instant case. Simply because appellant testified that he

had the consent of the owner of the vehicle does not entitle him to a
mistake of fact instruction.

*Id.* at 913.

Other courts have reached similar conclusions. *See Traylor v. State,* 43 S.W.3d 725, 730-31
(Tex. App.-Beaumont 2001, no pet.) (concluding that mistake-of-fact instruction was unnecessary
because, had jury believed defendant's story, it could not have convicted him under charge given);
*Sarver v. State,* 24 S.W.3d 448, 454-55 (Tex. App.-Texarkana 2000, pet. ref'd) (holding that trial
court was not required to submit independent-impulse instruction that was already adequately
covered by charge); *see also Sands v. State,* 64 S.W.3d 488, 495-96 (Tex. App.-Texarkana 2001, no
pet.) (concluding that mistake-of-fact instruction should have been given but holding that, because
jury was "squarely" presented with defense of mistake, failure to submit requested instruction was
not harmful).

Here, the jury heard Duncan's story through counsel's cross-examination.  The effect of his
testimony, and the thrust of his requested instruction, amounted to an attempt to convince the jury
that his intent was something other than the criminal intent - that is, the intent to commit theft - that
was necessary for the commission of a burglary. However, to convict him of that offense, the State
was already required to prove beyond a reasonable doubt that Duncan entered the house, without the
effective consent of the owner, *with the intent to commit theft. See* TEX. PENAL CODE ANN.
§ 30.02(a)(1); *Coleman v. State,* 832 S.W.2d 409, 413 (Tex. App.-Houston [1st Dist.] 1992, pet.
ref'd) ("Intent, as an essential element of the offense of burglary, must be proved by the State beyond
a reasonable doubt; it may not be left simply to speculation and surmise."). To that end, the jury
received the following instruction:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of June, 2010, in Harris County, Texas, the defendant, Adrian Vincent Duncan, did then and there unlawfully, with intent to commit theft, enter a habitation owned by Nita Brown, a person having a greater right to possession of the habitation than the defendant, without the effective consent of Nita Brown, namely, without any consent of any kind, then you will find the defendant guilty of burglary of a habitation with intent to commit theft, as charged in the indictment.

(Docket Entry No. 10-5, p. 56).

The jury was also specifically instructed that it had to acquit the appellant if the State failed to prove, beyond a reasonable doubt, each and every element of the charged offense. Thus, unless the jury found that Duncan intended to commit theft, it was required to acquit him of burglary. The jury was instructed: "The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant." (Docket Entry No. 10-5, p. 59).

Therefore, under these facts, the trial court was not required to submit a defensive issue that, in the context of this case, did no more than recast the required element of criminal intent as a defensive issue. *See Goodrich v. State,* 156 S.W.3d 141, 147 (Tex. App.-Dallas 2005, pet. ref'd); *Chavers,* 991 S.W.2d at 460; *see also Davis v. State,* 651 S.W.2d 787, 792 (Tex. Crim. App. 1983) ("When a refused charge is adequately covered by the charge given, no harm is shown."). Duncan could not have been convicted under the charge given had the jury believed his story that he lacked the intent to commit theft. Apparently, they did not. Duncan does not make the claim that he was reasonably mistaken about the legality of his presence in Brown's garage. In short, there is no reason to believe that he was entitled to a mistake of fact instruction; consequently, his claim is without merit. Duncan has failed to show that Greenlee's failure to request a mistake of fact instruction

amounted to deficient performance.  Nor has Duncan shown any prejudice resulting from the alleged denial of the mistake of fact instruction.

Duncan is not entitled to habeas relief on this claim.

**D.      911 Recording**

Duncan contends that Greenlee failed to introduce the 911 recording.  Duncan claims that there are statements on the 911 recording that are inconsistent with Nita Brown's trial testimony. Duncan did not identify the inconsistency.

At trial, Brown testified that she called 911 after seeing Duncan in her garage.  She told 911 that she saw a man in her garage and that her neighbor was following him.  (Docket Entry No. 17-3, p. 33).  She testified that her conversation with 911 lasted approximately thirty seconds.  (*Id.*).  On cross-examination, Greenlee had the following exchange with Brown regarding her call to 911:

> Q.      What did you tell 911?
>
> A.      That there was a man in my garage.
>
> Q.      Okay. Did you tell 911 there was a man in your garage who had opened a closet door and attempted to steal a compressor from your garage?
>
> A.      No.
>
> Q.      Just simply someone standing in your garage; correct?
>
> A.      Yes.

(Docket Entry No. 17-3, p. 53).

On re-cross-examination, Greenlee questioned Brown as follows:

> Q.      And you did not tell 911 when you called them that someone was in your garage, opening your closet, trying to steal a compressor, did you, ma'am?

A.   No.

Q.   You didn't tell your neighbor that either, did you?

A.   No.

Q.   Just simply said, someone is in my garage?

A.   Yes, sir.

(Docket Entry No. 17-3, p. 66).

In his closing argument, Greenlee stated:

And when she made the 911 call and when she spoke with Ms. Jackson, what did she tell them? She told Ms. Jackson, a suspicious person. She didn't say, somebody is in my garage trying to steal something, a compressor. She simply said, a suspicious person. When she made the 911 call when she's in her house with the door closed and she's calm, what did she tell you. When I called 911 I simply told them it was a suspicious call. And that was the call that dropped.

(Docket Entry No. 17-3, p. 158).

Greenlee's strategy was to show that Duncan did not have the requisite intent to commit burglary. Greenlee conceded that Duncan was in Brown's garage. Greenlee argued that Duncan was, at most, guilty of criminal trespass, not burglary of a habitation with intent to commit theft. (Docket Entry No. 17-3, p. 163).

Duncan does not explain how introduction of the 911 tape would have altered the outcome at trial. Brown testified that her conversation with 911 only took thirty seconds and that she only reported seeing Duncan in her garage. She readily admitted that she never told 911 that Duncan had been trying to open the closet door to steal the compressor. Duncan has failed to show that

Greenlee's failure to introduce the 911 recording amounted to deficient performance. Nor has Duncan shown any prejudice resulting from the alleged failure to introduce the 911 recording.

Duncan is not entitled to habeas relief on this claim.

### E.    Instructed Verdict

Duncan faults Greenlee for failing to request an instructed verdict based on the lack of corroborating evidence and on the complainant's inconsistent statements. The record shows that Greenlee did ask for a directed verdict, and the trial court denied the motion. (Docket Entry No. 17-3, p. 151).

Duncan's claim that Greenlee failed to request a directed verdict fails. Duncan has not shown that Greenlee's actions amounted to deficient performance. Nor has Duncan shown any prejudice.

Duncan is not entitled to habeas relief on this claim.

### F.    Admitting Duncan's Guilt

Duncan complains that Greenlee admitted his guilt by acknowledging that Duncan was in Brown's garage. As discussed above, Greenlee's strategy was to argue that Duncan was only guilty of the lesser-included offense of criminal trespass. At trial, Brown identified Duncan as the man she saw in her garage. (Docket Entry No. 17-3, p. 23). In response, Greenlee argued that Duncan was in the garage but that there was no evidence that he had moved the air compressor. In closing, Greenlee argued:

> And we talked about the notion of lesser includeds. And all of you
> said if given evidence of lesser includeds, you'd consider it. You got
> evidence of lesser included in this case, you have instructions
> specifically on point with regard to the issue about criminal trespass.
> Do not dispute that that exists. I think clearly this case showed
> criminal trespass. Whether or not the State made the hurdle of intent
> to commit theft is where I think the reasonable doubt is. And when

> we said, if they stumbled on that hurdle, it doesn't make any difference if you think the State can jump over these remaining hurdles. This race ends and this is a not guilty. I think that for you to be able to make the determination beyond a reasonable doubt as to whether or not there was intent to commit theft, I think you should have had more and I don't think you got it in this case, some kind of link.

(Docket Entry No. 17-3, p. 163).

Duncan contends that his counsel failed to subject the prosecution's case to meaningful adversarial testing on the individual elements constituting the lesser-included offense of criminal trespass. In *Bell v. Cone*, 535 U.S. 685, 695 (2002), the Supreme Court clarified when an attorney's failure to subject the prosecution's case to meaningful adversarial testing results in a constructive denial of counsel. The Court, reiterating language in *United States v. Cronic*, 466 U.S. 648 (1984), stated that an attorney must "*entirely* fail[] to subject the prosecution's case to meaningful adversarial testing" for the presumption of prejudice to apply. *Bell*, 535 U.S. at 696 (quoting *Cronic*, 466 U.S. at 659) (emphasis in original). In other words, an attorney must completely fail to challenge the prosecution's case, not just individual elements of it. *Id*. Critically for purposes of this appeal, the Court further noted that when applying *Strickland* or *Cronic*, the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a "difference . . . not of degree but of kind." *Id*. Under this rationale, when counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. *Id*. at 1851–52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution's case. Under the Court's reasoning, then, *Cronic* is

reserved only for those extreme cases in which counsel fails to present any defense.  The court

presumes prejudice in such cases because it is as if the defendant had no representation at all.  In

contrast, strategic or tactical decisions are evaluated under *Strickland*'s traditional two-pronged test

for deficiency and prejudice. *Haynes v. Cain*, 298 F.3d 375 (5th Cir. 2002).

Previous circuit court decisions have elaborated on this distinction between ineffective

assistance of counsel and the constructive denial of counsel.  Collectively, these decisions reinforce

the notion that defense counsel must *entirely* fail to subject the prosecution's case to meaningful

adversarial testing for the *Cronic* exception to apply. *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th

Cir. 2000) (holding that "[w]hen the defendant receives at least some meaningful assistance, he must

prove prejudice in order to obtain relief for ineffective assistance of counsel" (quoting *Goodwin v.*

*Johnson*, 132 F.3d 162, 176 n.10 (5th Cir. 1997))). Thus, when analyzing an attorney's decision

regarding concession of guilt at trial, courts have found a constructive denial of counsel only in those

instances where a defendant's attorney concedes the only factual issues in dispute. *See United States*

*v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (holding that "[a] lawyer who informs the jury that

it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that

are in dispute has utterly failed to subject the prosecution's case to meaningful adversarial testing").

In contrast, those courts that have confronted situations in which defense counsel concedes the

defendant's guilt for only lesser-included offenses have consistently found these partial concessions

to be tactical decisions, and not a denial of the right to counsel.  As such, they have analyzed them

under the two-part *Strickland* test.  Greenlee conceded that Duncan was in Brown's garage.

Greenlee made a tactical decision to focus on the lack of intent to commit burglary, an element of

the offense.  Greenlee made a tactical choice to argue that Duncan was guilty of the lesser-included offense of criminal trespass.

Duncan has failed to show that Greenlee's concession that Duncan was in the garage amounted to deficient performance.  Nor has Duncan shown any prejudice resulting from the concession.

Duncan is not entitled to habeas relief on this claim.

### G.      Perjured Testimony

Duncan argues that Greenlee failed to object to and impeach Brown's perjured testimony. He asserts that Brown's trial testimony contradicted her statements to police.  He claims that Brown committed perjury by giving different accounts of events on direct examination and cross-examination. Duncan notes that on direct examination, Brown testified that she knew the closet door was closed and that the air compressor was in the closet. On cross-examination, Brown testified that she was not certain.

On direct examination, the following exchange took place between the prosecutor and Brown:

> Q       (By Mr. Brodsky) How far away were you from the garage
>         when you noticed him?
>
> A        I was at the entrance of my garage.
>
> Q       And was he physically inside the garage?
>
> A       Yes, sir.
>
> Q       Okay. What was he doing?
>
> A       He looked at me and then walked past me.

Q      Did he say anything to you?

A      At the time I said -- I was a little startled and I said what -- can
I do something for you? And, I'm fine, and he just walked
past me out into the alley.

Q      So he said he was fine?  Now, was anything moved in the

garage?

A      Yes.

Q      What was moved?

A      There was an air compressor that had been moved from the
closet, a closed closet of the garage, out into the garage.

Q      And when you left to go on your walk earlier, was that garage
-- I mean, excuse me -- was that closet door closed?

A      Yes, it was. It stays closed.

Q      And was that air compressor out in the middle of the garage

before you left?

A      No, it was in the closet.

Q      Is that where it normally stays?

A      Yes.

(Docket Entry No. 17-3, pp. 24-25).

On cross-examination, Greenlee questioned Brown about her failure to notice that the air

compressor had been moved out of the closet and into the middle of the garage.  (Docket Entry No.

17-3, pp. 56-57).  Brown admitted on cross-examination that she did not notice the compressor was

out of place until she came into the garage with the police.  She testified that she did not notice the

compressor when she initially saw Duncan in her garage.  (*Id.* at 56-57).  Duncan's claim that Brown

gave perjured testimony is entirely conclusory.  Duncan has failed to show that Greenlee's failure to object to Brown's testimony amounted to deficient performance.  Nor has Duncan shown any prejudice resulting from the alleged failure to object to this testimony.  Duncan is not entitled to habeas relief on this claim.

### H.    Defective Jury Charge and Independent Investigation

Duncan faults Greenlee for failing to object to the jury charge.  He complains that the jury charge did not track the indictment.  He argues that the charge came from a different section of the burglary statute.  Duncan also claims that Greenlee failed to conduct an independent investigation of Brown's prior statement.  He maintains that the charge shifted from an offense arising under Section 30.02(a)(1) to 30.02(a)(3).  Duncan was indicted under Section 30.02(a)(1), which involves an entry with burglarious intent.  The charge was correct since it alleged that Duncan entered Brown's garage with burglarious intent. (Docket Entry No. 10-5, Clerk's Record, pp. 56).  The charge and the evidence at trial tracked the indictment.  Duncan has failed to show that Greenlee's failure to object to the jury charge or conduct an investigation amounted to deficient performance.  Nor has Duncan shown any resulting prejudice.

Duncan is not entitled to habeas relief on this claim.

### I.    Understanding the Law

Duncan claims that Greenlee did not understand the law because "he admitted the element of the offense needed to render a guilty verdict."  As discussed previously, Greenlee's strategy was to argue that Duncan was only guilty of criminal trespass because he lacked the intent to commit burglary.  Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  "[S]crutiny of counsel's

performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

## VII.   Constructive Denial of Representation

(Ground 5)

Duncan claims that he was constructively denied the right to representation due to Greenlee's misconduct, including Greenlee's threats and fabrications, ineffectiveness, and their "irreconcilable differences." To sustain a claim of inadequate assistance of counsel, a defendant usually must meet the standards of *Strickland v. Washington,* 466 U.S. 668 (1984), which requires proof that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658

(1984).  In such cases, where the defendant is constructively denied assistance of counsel, prejudice is automatically assumed and need not be proven. *Id.* at 658-62.

"'A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was *in effect denied any meaningful assistance at all.*'" *Jackson v. Johnson,* 150 F.3d 520, 525 (5th Cir. 1998) (quoting *Childress v. Johnson,* 103 F.3d 1221, 1229 (5th Cir. 1997)) (emphasis added). *Cf. Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir. 2001) (en banc) (upholding a *Cronic* claim in a case where the defendant's lawyer was asleep during parts of the trial because "[u]nconscious counsel *equates to no counsel at all.* Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of the client"), *cert. denied,* 535 U.S. 1120 (2002).

The Supreme Court recently has emphasized that for *Cronic* to apply, "the attorney's failure must be *complete.*" *Bell v. Cone,* 535 U.S. 685, 697 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,*" the Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the trial. *Id.* It is not enough for the defendant to show mere "shoddy representation" or to prove the existence of "errors, omissions, or strategic blunders" by counsel. *Jackson,* 150 F.3d at 525. "[B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice." *Id.* (citations omitted). *See also Gochicoa v. Johnson,* 238 F.3d 278, 284-85 (5th Cir. 2000) (same).

Greenlee "exercise[d] judgment" on behalf of his client throughout, and he was certainly far superior to having "no counsel at all." *Id.*  Greenlee undeniably rendered "meaningful assistance" to his client throughout the guilt and penalty phases.  Greenlee made a tactical decision to concede that Duncan was in Brown's garage, but that he had no intent to commit burglary.  Greenlee argued

that Duncan was only guilty of the lesser-included offense of criminal trespass.  Although this strategy may have been mistaken, it at most constitutes a "strategic blunder" or "bad lawyering" of precisely the sort that under Fifth Circuit precedents is insufficient to support a *Cronic* claim. *Id.* Likewise, Greenlee's performance fell far short of the "complete" failure required by the Supreme Court. *Bell,* 535 U.S. at 697.

The state court's decision was not contrary to clearly established federal law.  Duncan is not entitled to habeas relief on this claim.

## VIII.   State's Pre-Trial Investigation

(Ground 6)

Duncan complains that the State's investigation was "impermissibly suggestive" in that the investigation focused on him by assuming the complainant was truthful and by failing to fingerprint the air compressor or the closet door.  Due process requires the Government to preserve evidence that meets the standard of "constitutional materiality," or evidence that possesses both "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984).  Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. *Arizona v. Youngblood,* 488 U.S. 51, 57-58 (1988).  Duncan argues that the police failed to examine the compressor and closet door handle for fingerprints.  Officer McLaughlin testified that he was unable to take fingerprints from the compressor because the handle had a "rough surface" and that he needed a "clean, smooth surface" to lift the prints. (Docket Entry No. 17-3, Reporter's Record, Vol. III, p. 144).  He also said that it "would be difficult to get fingerprints off

of a door handle [because] [m]ost people wrap their hands around the door handle and it's going to

be smudges and smears." (Docket Entry No. 17-3, Reporter's Record, Vol. III, p. 145).

Officer McLaughlin further testified:

> Q    All right. Now, I'd like to talk to you a little bit about fingerprints here.  How often do you find fingerprints on items in your line of work?
>
> A    Since I've been in burglary and theft?
>
> Q    Yes.
>
> A    Never.
>
> Q    Never. Okay. Has it ever happened, at all?
>
> A    When I was in patrol, on occasion, yes, sir.
>
> Q    Okay. Out of -- I mean, just rough estimate a percentage of cases that you work, how many times have fingerprints been found?
>
> A    Oh, goodness. Three percent, maybe five percent.
>
> Q    So, would it be fair to say or -- let's strike that question.  Did you attempt to get fingerprints in this case?
>
> A    No, sir.
>
> Q    All right. Why did -- why not?
>
> A    Basically, I don't have the time to go around to every burglary and attempt to look for prints to see if there is any prints available at the scene. I don't have the equipment, I don't carry the equipment with me to be able to lift the print and tag the print.
>
> Q    Are Crime Scene Units, are they busy, as well?
>
> A    On something such as this they wouldn't even consider going out to the scene.
>
> Q    What do they usually respond to?

> A      Homicides, robberies, burglary where you have several
> $100,000 in thefts.

(Docket Entry No. 17-3, pp. 142-143).

The crime scene photos were "staged" and taken the day before trial because police failed

to take photographs the day of the offense. (Docket Entry No. 17-3, Reporter's Record, Vol. III, pp.

26-30, 45, 59-60).  Greenlee argued that there was nothing linking Duncan to the compressor.

Greenlee pointed to the failure on the part of police to search for fingerprints on the compressor and

closet door.  Greenlee further pointed to the fact that the photographs introduced at trial were not

taken on the day of the offense.  Greenlee argued that because the photographs were staged, they

were not accurate and not of evidentiary value.

Duncan does not argue that the police acted in bad faith with respect to the failure to take

fingerprints.   Duncan has not established that the police acted in bad faith.   His

failure-to-preserve-evidence claim therefore is unavailing. *Trombetta,* 467 U.S. at 489; *Arizona,* 488

U.S. at 57-58.  Duncan is not entitled to habeas relief on this claim.

## IX.    The Claim Based on the Failure to Correct False Testimony

Duncan claims that the State failed to correct false testimony.  On direct, Brown said that she

was sure when she left to walk the dog that the closet door in her garage was closed and that the air

compressor was in the closed closet door.  On cross-examination, Brown said when she confronted

Duncan in the garage, she could not remember whether the closet door was open and the air

compressor was out.  Duncan also asserts that Brown contradicted herself in her testimony

concerning whether she noticed that the air compressor was out-of-place.

To establish a basis for relief on this ground, Duncan must prove that the prosecution knowingly presented false testimony. *Napue v. Illinois,* 360 U.S. 264 (1959).  Mere inconsistencies or errors in a witness's testimony do not, standing alone, establish perjury. *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990).

The record shows that the State did correct Brown's testimony.  The State pointed out that Brown did not specifically remember whether the closet door was open and whether the air compressor was where it "normally" was.  On direct, Brown said that the closet door was closed and the air compressor was in the closet.  The State pointed out on direct, "Now, let's just to be sure. You didn't – did you check the closet before you went for your walk?" (Docket Entry No. 17-3, Reporter's Record, Vol. III, p. 29).  She said, "No, I did not." (*Id.*).  She also said that the air compressor was "normally" in the closet. (*Id.* at 24, 29).

The jury heard the testimony of Brown, and they could decide whether the discrepancies in her testimony affected their credibility.  Duncan's conclusory assertions that Brown's testimony was false are insufficient to show that the State knowingly presented false material testimony. *See United States v. Leahy,* 82 F.3d 624, 632 (5th Cir. 1996); *United States v. Washington,* 44 F.3d 1271, 1282 (5th Cir. 1995).  Nothing in the record suggests that Brown's testimony was false or that the prosecutor knew her testimony to be false in any respect. *See Napue v. Illinois*, 360 U.S. 264, 271 (1959).

Duncan is not entitled to habeas relief on this claim.

## X.      Right to Speedy Trial

Duncan claims that he was denied his right to a speedy trial.  The offense occurred on June 8, 2010; he was indicted on August 18, 2010; and he was tried and convicted on March 28, 2011,

nine months after his arrest and seven months after the indictment.  As noted above, the Fourteenth

Court of Appeals determined that the delay did not trigger the *Barker* analysis.  As discussed in

Section VI-A, this court determined that Duncan's right to a speedy trial was not violated, and

Greenlee did not render ineffective assistance in failing to request a speedy trial.

The state court's decision was not contrary to clearly established federal law.  Duncan is not

entitled to habeas relief.

## XI.      Bail Denial

Duncan complains that the denial of bail denied him a fair trial.  As discussed in Section VI-

B, the record shows that Duncan's criminal history made him ineligible for bail.

The state court's decision was not contrary to clearly established federal law.  Duncan is not

entitled to habeas relief on this claim.

## XII.     Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 13), is GRANTED.

Duncan's petition for a writ of habeas corpus is DENIED.  This case is DISMISSED.  Duncan's

motion for judicial notice, (Docket Entry No. 14), is DENIED as moot.  Duncan's motion to

supplement his response, (Docket Entry No. 16), is GRANTED.  Any remaining pending motions

are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability

is a substantial showing of the denial of a constitutional right.  *Hernandez v. Johnson,* 213 F.3d 243,

248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)).  Under that standard,

an applicant makes a substantial showing when he demonstrates that his application involves issues

that are debatable among jurists of reason, that another court could resolve the issues differently, or

that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000).   Where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Duncan's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Duncan has not made the necessary showing for issuance.  Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on _____, 2015.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE